IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DAVID LINNINS, KIM WOLFINGTON, )
and CAROL BLACKSTOCK, on behalf )
of themselves and all others similarly )
situated, )
              Plaintiffs, )
 )
     v. )                     1:16CV486
 )
HAECO AMERICAS, INC. (f/k/a )
TIMCO AVIATION SERVICES, )
INC.), )
              Defendant. )

**MEMORANDUM ORDER**

This matter is before the Court on a Consent Motion to Substitute Renamed Corporate Defendant, [Doc. #43], which is granted, and Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Expenses[1], [Doc. #40]. On May 31, 2018, a hearing was held on Plaintiff's Motion for Final Approval of Class Action Settlement, which was granted, and the instant motion for attorneys' fees and costs, the ruling on which was reserved until Class Counsel filed their supplement in further support of Plaintiffs' motion. After a review of the materials submitted

---

[1] Perhaps anticipating the motion to substitute HAECO Americas, Inc. for TIMCO Aviation Services, Inc., Plaintiffs filed both their motion for attorneys' fees and costs and their supplemental memorandum with a case caption identifying "HAECO Americas, LLC, formerly known as TIMCO Aviation Services, Inc." and "HAECO Americas Line Services, LLC" as Defendants. (See [Docs. #40, 44].) However, the Consent Motion makes clear that TIMCO Aviation Services, Inc. is now HAECO Americas, Inc. (emphasis added) and makes no mention of HAECO Americas Line Services, LLC.

in support of Plaintiffs' motion and application of the relevant case law, the motion is granted.

This case involves the alleged 2016 disclosure of the personal identifying information of employees of HAECO Americas, Inc.[2] ("HAECO") and copies of their W-2 statements in response to an email phishing scheme. Plaintiffs asserted claims for negligence, invasion of privacy, and violation of the North Carolina Unfair and Deceptive Trade Practices Act which included an alleged violation of the North Carolina Identity Theft Protection Act. (See Am. Compl. [Doc. #29].)

Pursuant to the terms of the Settlement Agreement, members of the class who had not previously registered for two years of Experian ProtectMyID Elite were given another opportunity to enroll. (Settlement Agreement at 10 [Doc. #27-1].) Members of the class who purchased identify theft protection at their own expense were able to seek reimbursement up to $350.00. (Id. at 11.) A Claim Fund was established in the amount of $312,500 to compensate class members for damages, expenses, and inconveniences they incurred. (Id. at 11-13.) Finally, HAECO agreed to take data and cyber security steps, including mandatory cyber security training for all employees, for at least three years. (Id. at 14.) For their work to achieve these results and as part of the Settlement Agreement, Class Counsel seek $150,000 inclusive of attorneys' fees, costs, and expenses, to be

---

[2] Because the Court is granting the Consent Motion to Substitute Renamed Corporate Defendant, references in this Memorandum Order that would previously have been to TIMCO Aviation Services, Inc. are now to HAECO Americas, Inc.

paid separate and apart from any payments made to the class members. No putative class member filed objections to the Settlement Agreement when afforded the opportunity to do so. (Decl. of Charles Marr ¶ 12 (May 11, 2018) [Doc. #41].)

Rule 23(h) of the Federal Rules of Civil Procedure provides that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." A reasonableness determination involves weighing

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243-44 (4th Cir. 2009) (applying these factors when determining the reasonableness of a lodestar calculation); see also Singleton v. Domino's Pizza, LLC, 976 F. Supp. 2d 665, 682 (D. Md. 2013) (providing similar factors to be used in percentage-of-the-common-fund cases).

According to Plaintiffs, when this class action lawsuit commenced in May 2016, it was at least one of the first, if not the first, of its kind. (Pls.' Suppl. Memo. in Supp. at 6 [Doc. #44].) Accordingly, within the Fourth Circuit and elsewhere, the legal issues presented in this case and those like it are still being

3

defined. Here, prior to settlement, Defendants moved to dismiss and argued that the claim for negligence was barred by the economic loss rule, the allegations of an intrusion of privacy were insufficient under North Carolina law, the claims for negligence and unfair and deceptive trade practices involved an employer-employee relationship and lacked the requisite intent for a violation of the state's identity theft protection act, and the alleged injury was merely a hypothetical future injury. (See Memo. of Law in Supp. at 2 [Doc. #14].)

Class Counsel, who took this matter on contingency, acknowledge the challenges they faced pursuing this action. (See, e.g., Decl. of John A. Yanchunis ¶¶ 25, 26 (May 16, 2018) [Doc. #39-2]).) For example, as of May 2018, nationwide only one data breach consumer class had been certified. (Id. ¶ 25.) In other W-2 data disclosure cases, the results have been mixed. Compare Curry v. Schletter, Inc., No. 1:17-CV-1-MR-DLH, 2018 WL 1472485 (W.D.N.C. Mar. 26, 2018) (denying a motion to dismiss claims of negligence, breach of implied contract, invasion of privacy, and violations of North Carolina's Unfair and Deceptive Trade Practices Act and Identity Theft Protection Act[3]) with Savidge v. Pharm-Save, Inc., No. 3:17-CV-186-TBR, 2017 WL 2986972 (W.D. Ky. Dec. 1, 2017) (finding the economic loss rule did not bar the negligence claim and alleged out-of-pocket expenses were cognizable injuries, but allegations of future harm and

---

[3] According to Plaintiffs, though, that case has not progressed further because the defendant filed for bankruptcy shortly after the court's ruling. (Pls.' Suppl. Memo. in Supp. at 8.)

4

invasion of privacy were insufficient) & Giroux v. Essex Prop. Trust, Inc., No. 16-CV-1722-HSG, 2017 WL 1549477 (N.D. Cal. May 1, 2017) (granting the motion to dismiss for lack of standing) & Castillo v. Seagate Tech., LLC, No. 16-CV-1958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) (finding the economic loss rule barred the negligence claim and allegations of a threat of impending future harm were insufficient to support injunctive relief). Class Counsel's results in this action – identity theft protection and compensation for class members and injunctive relief against HAECO – in the face of a pending motion to dismiss and developing case law are noteworthy.

This outcome is, in part, likely a result of the professional experience of Class Counsel, Jean Martin of North Carolina and John Yanchunis of Florida. They have not only received recognition for their litigation practices, (see, e.g., Decl. of Jean Sutton Martin ¶¶ 5, 6 (May 16, 2018) [Doc. #40-1]; Decl. of Yanchunis ¶¶ 13, 17), but they have a combined 57 years of experience primarily in complex litigation, (see, e.g., Decl. of Martin ¶ 7; Decl. of Yanchunis ¶ 2). They also have unique experience in data breach class actions, as well as significant experience in data privacy cases and other class actions. (See Decl. of Martin ¶¶ 8-10; Decl of Yanchunis ¶¶ 1-8.) Martin is aware of no other law firms in the country who have been involved in more W-2 data disclosure cases. (Decl. of Martin ¶ 11; see also id. ¶ 28.)

Accordingly, Martin charged $650 and $700[4] per hour for the 145.10 hours she billed in this case as of May 16, 2018. (Decl. of Martin ¶ 17.) Yanchunis's firm billed 36.3 hours[5], bringing the combined lodestar bill to $127,849.60. (Id. ¶¶ 21, 23.) Their request for $150,000 inclusive of attorneys' fees, costs, and expenses represents a lodestar multiplier of 1.16[6], which does not take into account the work Class Counsel has undertaken since Plaintiffs submitted their motion. Similar rates and lodestar multipliers have been approved in class actions in this district, McCoy v. North State Aviation, LLC, No. 1:17-CV-346, Order (M.D.N.C. June 15, 2018) [Doc. #5] (using as a cross-check class counsel's hourly rates of $600 to $700 per hour for partners and calculating the lodestar multiplier as approximately 1.2), and in districts elsewhere in North Carolina, Rehberg v. Flowers Baking Co. of Jamestown, LLC, No. 3:12-CV-596-MOC-DSC, Final Order (W.D.N.C. June 30, 2017) & Decls. [Docs. #250, 245-1, 245-2, 245-5] (approving fees for attorneys from Pennsylvania and Minnesota as calculated using hourly rates ranging from $590 to $975 based on experience). Although Yanchunis was the Class Counsel first contacted by Plaintiff Carol Blackstock, Yanchunis engaged Martin because they worked together on many data security

---

[4] Her rate increased to $700 per hour on January 1, 2017. (Decl. of Martin ¶ 17.)
[5] Although Yanchunis and Martin attest that his hourly rate charged in this matter is his usual and customary hourly rate, (see Decl. of Yanchunis ¶ 31; Decl. of Martin ¶ 22), it does not appear as though Yanchunis actually provided his hourly rate.
[6] The combination of the lodestar bill and $1,324.18 in expenses, (see Decl. of Martin ¶ 18), leads to a lodestar multiplier of 1.16.

6

matters and the case was best suited to be filed in North Carolina. (Decl. of Yanchunis ¶ 21.)  The Fourth Circuit Court of Appeals has recognized that "where it is reasonable to retain attorneys from other communities, . . . the rates in those communities may also be considered", particularly "when the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally". Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175, 179 (1994).

In sum, Plaintiffs' request for $150,000 in attorneys' fees and expenses is reasonable.  First, there were no objections to Class Counsel's proposed request for attorneys' fees and expenses.  In addition, not only are Class Counsel experienced in complex consumer protection class actions, but their experience in W-2 data disclosure class actions is unique.  They took this case on a contingent basis at a time when the law applying to such cases was unsettled and developing.  Even today, results in W-2 data disclosure class actions are mixed.  Yet, here, Class Counsel succeeded in obtaining a positive result for their clients despite Defendant's pending motion to dismiss.  The total of $150,000 for attorneys' fees and expenses represents a lodestar multiplier of 1.16 not out of the norm.  All of these factors support granting Plaintiffs' motion.

For the reasons stated above, IT IS HEREBY ORDERED that Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Expenses, [Doc. #40], be GRANTED. IT IS FURTHER ORDERED that the Consent Motion to Substitute Renamed Corporate Defendant, [Doc. #43], be GRANTED and that HAECO Americas, Inc.

(f/k/a TIMCO Aviation Services, Inc.) be substituted for TIMCO Aviation Services, Inc., the case caption be amended to reflect that HAECO Americas, Inc. (f/k/a TIMCO Aviation Services, Inc.) is the defendant, and all current filings be deemed amended to reflect this substitution.

This, the 26th day of October 2018.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge